The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near and give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Please be seated. Court is in session. Today's cases will be called as previously announced. The times will be as allotted to counsel. The case today is number 221327, United States v. Christopher Ochoa. At this time, Mr. Andrews, please introduce yourself on the record to begin. Good morning. Judge Kayada, Judge Selya, Judge Helpe, my name is Robert Andrews. I represent Christopher Ochoa in this matter, and I request that I be granted the reservation of two minutes for rebuttal in this matter. Yes, you may have that, Mr. Andrews, and welcome back to both of you. I'm sorry we couldn't get both of your cases on the same day and save you an extra trip. Your Honor, I actually prefer arguing one case in one day. Well, then you got that. I can assure you we'll get you out of here on time to beat the traffic back to Maine. May it please the Court. In 2014, the United States Supreme Court addressed but-for causation in two ways. First, it required strict construction. And second, it untethered but-for causation from restitution cases in child pornography cases. These adjustments by the Supreme Court would have a significant effect on the rule with respect to restitution as that had previously been stated in the First Circuit. Isn't the Paroline case limited to child pornography cases? I think the Supreme Court was very clear it was limited to that. So I assume you're asking us to extend that rule to other types of cases. I am asking that the rule be extended. I mean, that's the particular belief that we're asking here. From our perspective, while the Supreme Court was unwilling to broadly interpret it in Paroline because that situation was particularly troubling within the various circuits, what we see come out of that is we can look at the differences between what happened with Paroline and what had become or is now the rule for child pornography cases in Rogers. In Rogers, the Supreme Court accepted cert for Rogers for remand. And then Rogers was re-argued here. And because in that case the restitution amount was reasonable and in line with Paroline, there were no changes made. But in the Paroline scenario, you have different defendants all across the nation. They're not acting in cahoots. It's not a conspiracy. It's not aiding and abetting. And that's why that rule applies there. So this scenario is different. There's actual conspirators. Your client had a role, an important role, as the sentencing judge determined. So isn't this a very different context? Well, I draw some parallels, Judge Helfi. And the parallels that I draw is that while it's true there's no conspiracy in child pornography cases, we are looking at aggregate harms. And the issue here for us isn't that complete restitution. Excuse me. Aggregate harm and concerted action are two different concepts. Yes. I mean we have held in a wide variety of settings that conspirators are generally responsible for any conduct reasonably foreseeable that results from acts taken in furtherance of the conspiracy. And you're asking us to deviate from that rather settled rule under a statute that was not before the Supreme Court in Paroline. I'm actually not asking for a deviation from that rule, Your Honor. What I'm asking for is some limitation on the discretion with respect to whether it can be joint and several or whether it can be apportioned. The idea isn't that Mr. Ochoa isn't going to pay his share. The idea is that the court is going to determine what that share is versus how the other members of the conspiracy should also be required. No, no, but in conspiracy cases, we've always said that a conspirator is responsible for all the harm that is reasonably foreseeable for the conspiracy so long as the acts are undertaken in furtherance of the conspiracy. That is typical, for example, in criminal sentencing adjudications where we calculate a defendant's offense level by virtue of what acts were reasonably foreseeable by the conspiracy. There was no conspiracy in Paroline. I agree with all that you've said, Judge Selye. What I'm asking the court to do is to look at the statute and say, why did Congress give the district courts or the court the authority to apportion restitution cases? And prior to Paroline and perhaps currently, that discretion is without bounds. The court can simply say, in conjunction with that concerted action, it was reasonably foreseeable, and of course it was, that he has to be responsible for all of it. But that amount is significant. And where's the abuse of discretion? Because that's a standard. You agree that's a standard we have to apply. I do. Where is the abuse of discretion? Again, your client was a lawyer. He had a leading role in the conspiracy. So based on those facts and the other facts of the record, where's the abuse of discretion? So the idea here is that the amount of restitution, which is significant, right, it's over $3 million, and that that is the abuse of discretion. There is no way that Mr. Ochoa is going to be able to pay the $3 million. And the question here is, does the court want to impose a policy in conjunction with Paroline that suggests the other members of the conspiracy should also be required to engage in what the Supreme Court has decided is a policy that has rehabilitative effects on the other members of the conspiracy? And without that in this case, the likelihood is that Mr. Ochoa will be shouldering that burden. Is there any case law at all that you're familiar with addressing whether in the case of joint and several liability restitution obligation that there's then any cause of action for contribution as among the jointly and severally liable parties? Your Honor, I'm not aware of any case that establishes that. And if we were to look at the other members of the conspiracy in this case, we understand that it's unlikely that they're going to get to a position in their lives where they'll be able to contribute meaningfully. Meanwhile, Mr. Ochoa will unlikely be able to become a licensed attorney or otherwise rehabilitate himself in his profession because of this outstanding obligation. I'm having some trouble. As I understand it, all the victims handed their money to your client in trust. And then unbeknownst to them, he turns around and gives it to other people. Well, so... Why shouldn't? It seems to me that when the clients come back knocking on the door and say, I want my money back, they're knocking on the right door. And it's not their problem that your client then gave it to other people. Well, and if we see the restitution order from the Florida Bar, that's in fact what Florida Bar said. The restitution is this amount. You need to pay it. And that is... Your Honor, if I might finish this point. Yes. And that's what happened, right? But we're talking about criminal liability in a sense. And that that has other ramifications throughout the process, not just restitution. I get it that Congress decided that for purposes of convenience and perhaps efficiency, that restitution should be mandatory as part of criminal cases. And we've seen the Supreme Court narrow that as to how large or how broadly that restitution can affect. Like, in Alphas, we see that travel expenses should not have been included in a restitution order. And that is where I would like this Court to go, is to say that, well, we agree that in significant cases where the burden is significant, that we should apportion it so that it is not astronomical for any one member of the conservative. And where exactly would Judge Woodcock have to have awarded restitution so not to, according to your argument, abuse his discretion? $1.5 million, $1,750,000? What would the threshold be? So what I did, Your Honor, was tie it to causation and a strictly construed causation. How much money did Mr. Ochoa get out of this? And that's what I asked the Court to impose. So if he'd emptied the trust account entirely and given it all to his colleagues after the people came in and trusted their money to him, he wouldn't have to pay any restitution by your theory? Well, I don't want to say that that's the only limitation or the only abuse. What I'm saying is that in a world where there's no bounds, there has to be some bounds. There are always bounds. The abuse of discretion standard imposes the obligation of reasonableness upon district courts in any function that's governed by abuse of discretion. And that gets back to Judge Keada's question. What's unreasonable about imposing this restitution obligation on Ochoa when every nickel passed through his trust account and he dispersed it? Your Honor, to be as candid as possible, under the current rules, nothing. Right? There's nothing unreasonable about that under the current rules. And our cases say that things like the defendant's ability to pay shouldn't be taken into account under the MVRA. And, Your Honor, my view of that is that since Proleen and Burge, where we've become untethered from but-for causation, that maybe it's time to reconsider that policy. But you're not talking about causation. You're talking about what your client received. Your client caused all of these losses in the sense that he accepted and disbursed all of the money. That, in my view, Judge Stelia, it's exactly like Proleen in that respect. There was no problem with but-for causation with respect to the victims of child pornography. What the court had a problem with was the fact that the pool was so broad and there was no concerted action. Sure, and there was. Yeah, but here there is concerted action. And unlike Proleen, the loss is clearly foreseeable, the extent of the loss. You put an image on the Internet, all right? You can only guess at how widely that's going to be disseminated. You take $3.5 million into your trust account and disburse it wrongfully, you know exactly what the extent of the loss is going to be. And that is why I say that the need for the limitation in child pornography cases is more apparent than the need here in cases of straightforward fraud. And all I'm asking for is something that might seem more reasonable to an individual who's trying to rebuild his life. But we cannot second-guess Judge Woodcock's discretion. That's for the district judge. So I think our hands are tied. We're using the abuse of discretion standard. If this is not de novo, that's one of the issues we have here. And that is the problem. But it's exactly like what was happening with child pornography cases within the circuits prior to Proleen. It took the Supreme Court to establish that it didn't need to be tethered or it could be untethered in its reasonableness. Let me also, as an analogy, let me just – I sat as a district judge for 15 years, and I issued restitution orders that were mandatory in hundreds of cases. And, for example, I – just an example. I may have had a carjacking case, and the victim sustained, let's say, $20,000 in medical bills, and then the loss of the vehicle was like $5,000, total of $25,000. The pre-sentence report, it was clear that, you know, the defendant could not pay a penny. He was in jail for the next 20 years. He had no money, no assets, but I still had to impose restitution. And once he's out, he doesn't go to jail for not being able to pay the money. If the probation officer – you know, you don't violate supervised release if you can't pay. You know, that's something the court will monitor during the supervision term. But, you know, there's cases that somebody might get an inheritance or win the main lottery, and at some point – and that's, you know, that's why these restitution orders, I think, are there in place. So in Proleen, Your Honor, what I saw happen was that the cases that had a more reasonable amount of restitution awarded remained undisturbed. But when the reason that Proleen became so significant was because joint and several liability was in the millions of dollars for all of those people, and that's what caused the Supreme Court to act. Well, the idea was that that statute, you know, in the Proleen, did not be used as a regular tort statute. And again, here, this is not a case where your client has to pay, I think, 3-point-something million. That's the exact amount. This is not a case where the rest of the judge imposed a restitution of, like, 20 million and said that's a 3.5 million that were lost plus XYZ for other possible damages or, you know, speculative damages. The judge specifically awarded what had been lost. And I agree with you, Your Honor, that that is, in fact, the weakest in the argument being made here. But the question is, has it been weakened enough with respect to both this First Circuit's law and what the United States Supreme Court has done with but-for causation generally to see a way forward for the court to act and impose that limitation? And that really is what I'm asking for. Thank you, Mr. Anders. Thank you. At this time, Mr. Kleinbord, please introduce yourself on the record to begin. Good morning. Brian Kleinbord for the United States. It may have pleased the Court. Your Honors, I'm going to start with the Paroline case, the Supreme Court case, because it does sound like the gist of Mr. Ochoa's argument this morning is that he's in agreement with the well-settled standards but is asking this Court to apply, adopt a new rule based on the Supreme Court's decision in Paroline. This argument was presented to the District Court. The District Court rightly rejected that argument and said that Mr. Ochoa's reliance on Paroline was misplaced, and that is correct for a number of reasons. I don't think the Supreme Court intended to abrogate sub salentio the Mandatory Victims Restitution Act and decades of case law applied by this Court and other circuits involving conspiracy to commit fraud cases like this case. Paroline was not a fraud case. It was a child pornography case. It was not a conspiracy. It was acknowledged in that case that the victim did not know the defendant, and it was stipulated that none of her claimed losses flowed from any specific knowledge about Mr. Paroline or his offense. And the Fifth Circuit basically, the ruling that was vacated, the Fifth Circuit enacted a rule that basically meant that any end user, a possessor of child pornography in that case was responsible for all of the restitution losses claimed by the victim, even though that child pornography depiction had been trafficked by thousands of other people. And so the defendant in that case was on the hook for $3.4 million of losses that, again, the defendant, although he certainly bore responsibility for some of the losses, it could not fairly be attributed that he was responsible for all of those losses. And the Supreme Court explicitly limited its holding to the special context of child pornography cases, and there was a different statute at issue in that case that governs those kinds of cases, not the MVRA, which is at issue in this case. And so I think that this case, I think there are three well-settled principles that are dispositive of the issue in this case. The first is that the district court had discretion to apportion restitution, but was not required to do so under the MVRA 18 U.S.C. 3664H. And this court reviews the court's determination under the abuse of discretion standard. The second principle is that Mr. Ochoa's conviction stems from a conspiracy, and as the court has noted so far in the argument, in the context of a conspiracy, a defendant is liable in restitution for all of the reasonably foreseeable acts of his co-conspirators. And finally, the third principle is that the whole purpose of the MVRA is to make victims whole. And so in this case, the record reflects that the district court was aware of its discretion to apportion or not apportion, and in fact it deferred sentencing in order to receive briefings specifically on that issue. And then it soundly exercised its discretion. I was going to ask that. The district court recessed the hearing, had briefs on the matter. This is not a case where the judge basically saw the presentation, here's restitution, the objection's denied. He carefully considered the whole matter. That's correct. Beyond the extent of what probably almost any judge would have done. Correct. The district court specifically deferred the issue of restitution in order to receive a briefing on that issue and carefully considered the party's memoranda and decided based on that and the record that it was appropriate in this case to impose full restitution on Mr. Ochoa under principles of joint and several liability. We don't even need to get to the conspiracy issue, did we? I mean, we've got a case here where this guy actually himself took in all the money. Yes. Who cares what he then did with it? Why should he get off? Why should he not have to hand it back to the people who trusted him? That's correct. And so even if this court, I think the fact that the court understood that it had discretion, carefully considered the issue, and then elected not to apportion restitution, I think that alone is enough to foreclose Mr. Ochoa's argument. But even if this court were to conduct a more searching review of the district court's determination in this case, the district court's decision was sufficiently supported by facts in the record, primarily that Mr. Ochoa was the only attorney in this conspiracy that he at least drafted or helped draft the agreements that were presented to these would-be investors. All of the money was deposited into his trust account, which lended legitimacy and made the investors feel that their money was going to be secure. And then Mr. Ochoa even acknowledged at sentencing that he knew it was wrong for him to take that money out of his trust account, use it for himself, give it to the other co-conspirators. And so Mr. Ochoa's argument that the other co-conspirators played a more significant role is just not supported by the record. And Judge Woodcock was – And those are factual findings. Yes. Those are factual findings that are certainly not clearly erroneous and do not warrant a finding that the court – Let me ask you, under the abuse of discretion standard, let's assume – we know the exact restitution amount, but let's assume Judge Woodcock received evidence about the interest and added that, let's say, 200,000 more. So would that be an abuse of discretion if he had that evidence and added that? I'm sorry, Your Honor. Aside from the restitution, he had a clear, undisputed amount of interest that applied to that money that was lost. Would that be abuse of discretion as well? Had he imposed that a little higher restitution? As long as the restitution determination was based on reliable evidence. Okay. And let me ask you another hypo. Let's say he – out of the blue, he said, well, there's about 30, you know, 3 million plus, but I'm going to award 8 million restitution. That would be an abuse of discretion if no factual findings or anything. Oh, right. No, yeah. But here that did not happen. He was very thorough, very clear. Yes, yes. There certainly was no arbitrary determination in this case. And as the court said, if there ever was a case for a co-conspirator to not have to pay the full amount under joint and several liability, this was not it. This was an outright fraud that Mr. Ochoa was a central member of this conspiracy. And unless the court has any further questions. Let me also ask you from your experience in your office, and I assume you've dealt with restitution matters, am I correct in what I stated earlier when I asked opposing counsel? When the district judge issues a restitution order for whatever amount it is, we, you know, I say we, my former role, I did not look to the ability to eventually pay. I would issue restitution. Now, if the person cannot pay it, you know, within 5, 10, 15, 20 years, he or she will not go to jail for that. He will not violate supervisory. But if the person ends up with the money or is working, then it's a portion. And you don't pay the whole chunk immediately. You know, it's little by little. Am I correct? Yes, that's correct, Your Honor. And, again, the purpose of the MVRA is to make the victims whole. And Judge Woodcock determined that the most appropriate way to achieve that purpose in this case was to order joint and several liability by all of the co-conspirators in this case. And that was an appropriate exercise of the court's discretion. And let me also ask you, under the abuse of discretion, had Judge Woodcock said, well, instead of 3 point whatever million I'm going to impose, there's other people involved, so it's going to be 2.6 million, that would not be an abuse of discretion either as long as he explained it, correct? Correct, correct. Thank you. Unless the court has any further questions, I'll submit on the arguments in my brief. Thank you. Thank you. At this time, Mr. Andrews, please reintroduce yourself on the record. Again, you have a two-minute rebuttal. Again, my name is Robert Andrews, and I represent Christopher Ochoa in this matter. I want to be very clear. I'm not asking that the court somehow limit the total amount of restitution. I'm asking that it be a portion among the co-conspirators. I'm also asking that the court consider those things in the statute, like his circumstances and his role, and whether it's appropriate to apportion an amount of restitution. And while I understand the court's point about the prior rule that in conspiracy cases, joint and several for the entire amount is appropriate. And I would agree with that to the extent that it were not so significant. It's very significant in this case. And it's not that restitution is tied to culpability. We've seen that culpability is removed from the equation, at least in proling. And all of those people were culpable to a significant amount, probably some more than others, into the damages to the victims of child pornography. Well, we're asking that that same rationale be applied here. And unless there are specific questions, I have nothing further. Well, just not a question, but I want to thank both you and counsel for the government. It's been a pleasure having you both days back to back. Thank you, Your Honor.